A00A0460. DEPARTMENT OF TRANSPORTATION
v. RASMUSSEN et al.
(534 SE2d 573)

McMurray, Senior Appellate Judge.

On March 13, 1997, the Georgia Department of Transportation ("DOT") filed a declaration of taking to condemn 0.216 acres of a 0.990-acre tract of land owned by Lloyd Rasmussen in order to widen Highway 124 at Rock Chapel Road in DeKalb County. The DOT also took 0.0689 acres of the tract as a permanent easement. The condemned parcel included a building which, at the time of the taking, was used as an automotive repair shop.

The building had once housed a service station. Several underground storage tanks still existed, but they were located on the portion of the land that the DOT did not take. Testimony at trial revealed the following: various state and federal regulations required that the tanks be either removed or closed underground by December 23, 1998; the property not taken could not be restored to the value it had at the time of the taking absent being made ready for commercial development and the property could not be redeveloped without removing the tanks.[1]

The DOT offered Rasmussen $28,136 for the taking. Rasmussen appealed, and a jury awarded him $52,520, including $46,020 for the market value of the property taken and $6,500 in consequential damage to the remainder. The consequential damage award was based on evidence of the cost to remove the tanks. Judgment was entered on the verdict, and this appeal followed. *Held*:

1. The DOT challenges the trial court's admission of evidence of consequential damage, arguing that the removal of the storage tanks was not a consequence of the taking. In support of its position, the DOT argues that the taking did not trigger the need to redevelop the property and so the cost to remove the tanks did not flow from the taking. We disagree.

Rasmussen's expert appraiser testified at trial that the owner would not have incurred the cost of removing the tanks absent the taking. He testified that the building which housed the automotive repair shop could have remained in place for an indefinite number of years. The appraiser stated that had the building remained in place, the tanks could have been filled with sand (or some other inert material) and properly closed without having to be removed. He further testified that the demolition of the building required Rasmussen to

---

[1] Rasmussen's expert pertinently testified that DeKalb County officials told him that a "site development plan would not be approved unless [the] tanks had been properly closed and in this case certified by the state as having been closed, which now means remove any contaminated soil. . . ."

remove the tanks on the remaining parcel in order to restore its value as commercial property ready for development. The appraiser testified that removing the tanks would cost approximately $10,000.

> In a condemnation proceeding involving a partial taking, two elements of damage are to be considered. The first is the market value of the property actually taken. The second is the consequential damage that will " *'naturally and proximately arise* to the remainder of the owner's property *from the taking of the part which is taken and the devoting of it to the purposes for which it is condemned. . . .'* (Cit.)" (Emphasis in original.) *Simon v. Dept. of Transp.,* 245 Ga. 478 (265 SE2d 777) (1980).

*Dept. of Transp. v. White,* 270 Ga. 281, 282 (508 SE2d 407).

The appraiser's testimony provides sufficient evidence that the cost to remove the storage tanks proximately arose from the taking. It follows that the trial court did not err in the admission of evidence of consequential damages.

2. The DOT next contends that the trial court abused its discretion in permitting evidence that the DOT placed its right-of-way line in such a way that the taking deliberately excluded the land containing the storage tanks. On that basis, the DOT claims that the trial court allowed counsel for Rasmussen to inject the issue of bad faith without following the procedure outlined in OCGA § 32-3-11 (c). This argument is without merit.

As held in Division 1, evidence of the cost to remove the storage tanks was relevant to the issue of consequential damage to the remainder. Evidence that the DOT drew its right-of-way line in a way that missed the tanks was relevant to show that they remained on Rasmussen's parcel.

> It is well-settled that "(u)nless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it." (Citation and punctuation omitted.) *Norman v. State,* 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990).

*Warren v. State,* 233 Ga. App. 699, 700 (2) (505 SE2d 777).

The trial court did not abuse its discretion in admitting the evidence at issue in the case sub judice. The potential for its prejudice

did not substantially outweigh its probative value.
*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED MAY 12, 2000 —
RECONSIDERATION DENIED MAY 31, 2000.

*Thurbert E. Baker, Attorney General, Zachary & Segraves, Kenneth L. Levy, Kenneth W. Carpenter*, for appellant.

*Simmons, Warren, Szczecko & McFee, M. T. Simmons, Jr.*, for appellees.